[Cite as *Olentangy Local Schools Bd. of Edn. v. Delaware Cty. Bd. of Revision,* 125 Ohio St.3d 103, 2010-Ohio-1040.]

OLENTANGY LOCAL SCHOOLS BOARD OF EDUCATION, APPELLEE, *v .*

DELAWARE COUNTY BOARD OF REVISION ET AL., APPELLEES;

KNICKERBOCKER PROPERTIES, INC. XLII, APPELLANT.

[Cite as *Olentangy Local Schools Bd. of Edn. v. Delaware Cty. Bd. of Revision,*

125 Ohio St.3d 103, 2010-Ohio-1040.]

*Taxation — R.C. 5713.03 — School board presented a prima facie case for using the sale price to determine value when it presented evidence of a sale that appeared on its face to be recent and at arm's length — Property owner did not meet its burden to refute the recency or arm's-length character of the sale.*

(No. 2009-0320 — Submitted February 24, 2010 — Decided March 24, 2010.)

APPEAL from the Board of Tax Appeals, No. 2006-H-1361.

_____

**Per Curiam.**

{¶ 1} This is an appeal from a decision of the Board of Tax Appeals ("BTA") that found the value of real property. Appellant, Knickerbocker Properties, Inc. XLII ("Knickerbocker"), challenges the BTA's determination that the December 2003 sale price of $27,605,000 constituted the value of the property for tax year 2005. Knickerbocker contends that the evidence shows a change in market conditions between the time of the sale and the tax-lien date, January 1, 2005, and that the change made it improper to use the earlier sale price in valuing the property. Knickerbocker also contends that the BTA should have adopted the opinion of its appraiser, who valued all the property sold in December 2003 (both real and personal property) at $24,600,000, then allocated $300,000 to the personal property, and thereby determined that the value of the real property on the lien date for 2005 was $24,300,000.

**{¶ 2}** Because the BTA adequately addressed Knickerbocker's contention that market conditions had changed, we defer to the BTA's finding that no change had been shown. We also reject Knickerbocker's contention that the BTA erred by not reducing the sale price by the amount allocated to personal property that was sold along with the real property. We therefore affirm the decision of the BTA.

### Facts

**{¶ 3}** On December 29, 2003, Sentinel Acquisitions Corporation purchased a 25-acre parcel plus an adjacent 1.726-acre "easement parcel" on Lazelle Road in the city of Columbus for a consideration of $27,605,000, and subsequently transferred the property to Knickerbocker.[1] The property is improved with a garden-apartment complex of 308,944 square feet. The 300 apartment units consist of eight different types located within two-story structures.

**{¶ 4}** The auditor assigned to the parcels a combined value of $27,058,900 for tax year 2005. Knickerbocker filed a complaint that sought to reduce the valuation to $19,000,000.[2] In response, the Olentangy Local Schools Board of Education ("school board") filed a countercomplaint seeking to retain the auditor's valuation. The Delaware County Board of Revision ("BOR") held a

---

1. Sentinel Acquisitions Corporation, the entity that purchased the property, was an affiliate of Sentinel Real Estate Corporation, which arranged for the purchase. After Sentinel Acquisitions purchased the property, it transferred it to Knickerbocker, which is an entity associated with a New York pension fund. Subsequently, Sentinel Real Estate Corporation served as property manager on behalf of Knickerbocker as owner.

2. The Olentangy Local Schools Board of Education had previously filed a valuation complaint for tax year 2003, asserting that the December 2003 sale established that the value of the property on January 1, 2003, was $27,605,000. That case ultimately reached this court, which held that the board of revision had failed to give proper notice of its hearing to Knickerbocker. *Knickerbocker Properties, Inc. XLII v. Delaware Cty. Bd. of Revision*, 119 Ohio St.3d 233, 2008-Ohio-3192, 893 N.E.2d 457, ¶ 18. We remanded the cause so that a new hearing could be held at the board of revision. Id. at ¶ 24.

hearing on August 30, 2006, during which Knickerbocker presented the testimony and appraisal report of Samuel Koon. Koon concluded that the real property should be valued at $24,300,000. The school board appeared through counsel at the BOR but presented no evidence and did not argue in favor of valuing the property at the December 2003 sale price. The BOR adopted the value determined by Knickerbocker's appraiser.

{¶ 5} The school board appealed to the BTA, initially seeking reinstatement of the auditor's valuation. At the BTA hearing, the school board argued for the first time that the BOR should have adopted the December 2003 sale price as the value of the property, and it offered the conveyance-fee statement as evidence of the sale.[3] In rebuttal, Knickerbocker presented the testimony of its appraiser, Koon, and the testimony of Anita Breslin of Sentinel Real Estate Corporation, who was involved in the due diligence in connection with the 2003 purchase. The purpose of their testimony was not only to validate the appraisal, but also to establish a change in circumstances between the December 2003 sale and the tax-lien date, January 1, 2005. That change would justify rejecting the school board's argument that the sale price should be used to value the property.

{¶ 6} Koon testified that both "nationally" and "in the Columbus market," a large number of tenants were "leaving apartment and rental communities to buy houses" between December 2003 and January 2005, because lenders were requiring very little down payment and relaxing the standards for purchasers to qualify for mortgage loans. The result was "a significant downward

---

3. R.C. 5715.19(G) generally precludes a complainant from introducing evidence at the BTA that it failed to introduce at the board of revision, if that evidence was previously available. In this case, the school board was a countercomplainant at the board of revision and did not introduce any evidence at that level. When the school board offered the conveyance-fee statement at the BTA, Knickerbocker's counsel explicitly stated that he did not object to that document's being introduced, because counsel regarded the statement as duplicative of information concerning the sale that Knickerbocker had submitted to the BOR as part of its appraisal. Because there was no objection to the conveyance-fee statement, the effect of R.C. 5715.19(G) is not at issue in this appeal.

impact on the occupancy rates of apartment communities." Koon testified that the performance of the property over 2004 and 2005 fell short of the projections that Knickerbocker had made in a pro forma document that had been prepared in connection with the 2003 purchase.

{¶ 7} Koon's appraisal report used the 2003 sale as one of the "comparable sales" and stated that the anticipated potential to increase rents "did not materialize due to the soft rental market." The appraisal also asserted that "[c]ompared to other transfers which occurred at that time, it appears the buyer overpaid for the property, indicating a downward adjustment" for the 2005 tax-lien date.

{¶ 8} In his appraisal report, however, Koon made adjustments that are not consistent with the theory of a declining market. With respect to two other comparable properties that sold during 2003, the appraisal made an upward adjustment to account for the time that had lapsed between the sales and the tax-lien date. Conversely, two comparables that sold during 2005 – after the lien date – were subjected to a downward adjustment.

{¶ 9} In her testimony, Breslin confirmed the property's poor rent performance in 2004. She stated that 2004 was a "particularly difficult period" because "interest rates were low and kept dropping for home mortgages," with the result that tenants were leaving units like those at issue. The losses were great "particularly at this property, because they're large units, three-bedroom units and two-bedroom units," thereby comparable to the residential living space of a single-family home. The exodus adversely affected rental income for 2004. The manager also testified that the appraisal's effective-gross-income computation exceeded the property's actual experience for 2004 and 2005.

{¶ 10} In its decision, the BTA first held that the school board had established its prima facie case for valuing the property at $27,605,000 by presenting evidence that the property had sold for that amount in December 2003,

one year and two days before the tax-lien date. *Olentangy Local Schools Bd. of Edn. v. Delaware Cty. Bd. of Revision* (Jan. 13, 2009), BTA No. 2006-H-1361, 2009 WL 110177, *2. Next, the BTA considered whether Knickerbocker's evidence rebutted the presumptive recency of the 2003 sale. Id. at *3-4. The board concluded that the owner had failed in its rebuttal for two main reasons: the appraisal did not use "paired sales," which might have demonstrated a change in market conditions, and various statements in the appraisal report itself created ambiguity as to whether market conditions had changed. Id. at *3-4. As for testimony regarding declining occupancy rates on the property, the BTA observed that the decline did not necessarily indicate a change in market conditions because "other factors, such as management practices, may also impact a vacancy rate." Id. at *4. Finally, the BTA found that the testimony established that the rates began dropping before the December 2003 purchase and therefore would have been taken into account in arriving at the purchase price for the property. Id.

{¶ 11} Accordingly, the BTA reversed the BOR and adopted the December 2003 sale price as the value of the property for tax year 2005. Id. Knickerbocker has appealed to this court.

### Analysis

*Knickerbocker failed to rebut the prima facie recency of the December 2003 sale*

{¶ 12} R.C. 5713.03 states that the auditor "shall consider the sale price of [any] tract, lot, or parcel to be the true value for taxation purposes" if the sale was at arm's length and occurred "within a reasonable length of time, either before or after the tax lien date." We have held that the "reasonableness of the length of time – sometimes expressed as whether the sale was 'recent' relative to the tax lien date – encompasses all factors that would, by changing with the passage of time, affect the value of the property." *Cummins Property Servs., L.L.C. v. Franklin Cty. Bd. of Revision*, 117 Ohio St.3d 516, 2008-Ohio-1473, 885 N.E.2d 222, ¶ 35. One factor is "consideration of changes that have occurred in the

market" between the date of sale and the tax-lien date.  Id., quoting *New Winchester Gardens, Ltd. v. Franklin Cty. Bd. of Revision* (1997), 80 Ohio St.3d 36, 44, 684 N.E.2d 312.

{¶ 13} In its first proposition of law, Knickerbocker contends that a sale qualifies as "recent" under R.C. 5713.03 only when evidence in the record "support[s] a finding that the market or conditions at the property have not changed between the date of the sale and January 1 of the tax year at issue."  The proposition reflects Knickerbocker's position that as the appellant before the BTA, the school board had the burden to "show that the market and value of the property did not change between December of 2003 and January 1, 2005." Contrary to Knickerbocker's position, the BTA held that the school board had made a prima facie showing by presenting the conveyance-fee statement showing the December 2003 sale price.  *Olentangy Local Schools*, BTA No. 2006-H-1361, 2009 WL 110177, *2.  As a result, the burden rested on Knickerbocker to refute the recency or arm's-length character of the sale.

{¶ 14} We agree with the BTA's disposition of this point.  In *Cummins*, we held that the "initial burden on a party presenting evidence of a sale is not a heavy one, where the sale on its face appears to be recent and at arm's length." *Cummins*, 117 Ohio St.3d 516, 2008-Ohio-1473, 885 N.E.2d 222, ¶ 41.  Indeed, we have repeatedly acknowledged that a school board presents a prima facie case for using a sale price to determine value when it presents evidence of a sale that appears on its face to be recent and at arm's length.  *Worthington City Schools Bd. of Edn. v. Franklin Cty. Bd. of Revision*, 124 Ohio St.3d 27, 2009-Ohio-5932, 918 N.E.2d 972, ¶ 28; *Columbus Bd. of Edn. v. Franklin Cty. Bd. of Revision* (1996), 76 Ohio St.3d 13, 16, 665 N.E.2d 1098.

{¶ 15} Therefore, the question before us is whether the BTA acted reasonably and lawfully when it held that Knickerbocker had failed to rebut the prima facie recency of the sale price.  The BTA is responsible for determining

factual issues, and if the record contains reliable and probative support for the BTA's determinations, this court will affirm them. *Satullo v. Wilkins*, 111 Ohio St.3d 399, 2006-Ohio-5856, 856 N.E.2d 954, ¶ 14. More specifically, we " 'will not reverse the BTA's determination on credibility of witnesses and weight given to their testimony unless we find an abuse of * * * discretion.' " *Strongsville Bd. of Edn. v. Cuyahoga Cty. Bd. of Revision*, 112 Ohio St.3d 309, 2007-Ohio-6, 859 N.E.2d 540, ¶ 15, quoting *Natl. Church Residence v. Licking Cty. Bd. of Revision* (1995), 73 Ohio St.3d 397, 398, 653 N.E.2d 240.

{¶ 16} In the present case, the evidence furnishes reliable and probative support for the BTA's conclusion. The record consists of the conveyance-fee statement, the 2003 purchase agreement, the appraisal report, the testimony of Koon before the BOR and then again before the BTA, the testimony of Sentinel Real Estate Corporation's employee Anita Breslin, and several additional exhibits.[4] Knickerbocker relies on particular statements that it elicited from Koon and Breslin that show unusually high vacancy and low income for 2004, and Knickerbocker contends that this evidence shows a change in market conditions between the December 2003 sale and the 2005 tax-lien date. The BTA addressed this argument and determined that in light of certain passages in the appraisal report and the testimony of the witnesses, the evidence as a whole was at most ambiguous on the issue of recency.

{¶ 17} The evidence supports the BTA's conclusion. The BTA points out that a study of "paired sales," i.e., a comparison of the sale prices of similar properties that sold both in 2003 and 2005, might constitute probative documentation of a change in value. *Olentangy Local Schools*, BTA No. 2006-H-

---

4. In its brief, the school board points out that it objected to the purchase agreement's being made an exhibit and argues that the exhibit should be disregarded. It is true that the school board objected, but the BTA examiner overruled the objection and admitted the document. In light of our disposition of the appeal in the school board's favor, any alleged error in the BTA's ruling was harmless.

1361, 2009 WL 110177, *3.4. Knickerbocker's appraiser, Koon, agreed that such a study would constitute an acceptable process for an appraiser to use to show a change in the market and admitted that he had not performed such an analysis in this case. Id. The BTA also pointed out that although Koon opined in his appraisal report that "[l]ow interest rates and a continuation in single-family housing development in the outer suburbs have placed increasing pressure on the apartment market to maintain a viable population for tenants," the appraiser did conclude that "continued population growth in the Columbus area" provided a "supplement to those apartment tenants displaced into the single-family-housing market." Id. at 3. This statement contradicts Knickerbocker's current position that a market depression for garden apartments afflicted Columbus as of January 1, 2005.

{¶ 18} Koon's appraisal report tends to contradict Knickerbocker's current theory of market change in one other respect. Had Koon concluded in preparing the appraisal that the market had changed between December 2003 and January 1, 2005, he would not have performed certain adjustments to his comparable sales. Koon subjected comparable sales that occurred during 2003 to an "adjustment upward for time" in order "to reflect the difference between the sale date and the appraisal date," while comparable sales that occurred during 2005 – i.e., after the tax-lien date – were subjected to an "adjustment downward for time" in order "to reflect the difference between the sale date and the appraisal date." Both those adjustments are consistent with the view that properties like the subject property have *tended to increase in value with the passage of time*. Moreover, the upward adjustment for 2003 sales cannot be reconciled with the current assertion of a general downward market trend between 2003 and 2005.

{¶ 19} Finally, the BTA relied on Breslin's testimony that mortgage-interest rates were dropping during 2003 to conclude that "any alleged change in the 2004 market was simply a continuation of the same conditions occurring in

2003." *Olentangy Local Schools*, BTA No. 2006-H-1361, 2009 WL 110177, *4. At oral argument, Knickerbocker asserted that the BTA misunderstood the testimony. The BTA assumed that Breslin was talking about the decline in mortgage rates for single-family homes when, according to Knickerbocker, Breslin was actually referring to mortgage rates paid by entities that purchased apartment complexes in order to become landlords. Breslin believed that the mortgage rates for purchasing apartment complexes continued to decline during the general period but, as her other testimony unequivocally establishes, she believed that the rates "kept dropping for home mortgages" during 2004 and thereby generated (in her view) an abnormally high vacancy.

{¶ 20} Ultimately, however, the alleged misunderstanding of the testimony is immaterial. Even if the BTA made such a mistake, the record simply does not document a change in mortgage rates that, together with other factors, would suffice to rebut the presumptive recency of the December 2003 sale. This circumstance makes any dispute about Breslin's testimony moot.

*The BTA had no legal duty to reduce the December 2003 sale price by an amount attributable to the value of personal property*

{¶ 21} Knickerbocker advances an alternative argument: if the December 2003 sale price is used to value the property for tax year 2005, the price should be reduced by the $300,000 allocable to personal property that constituted part of the sale. We hold that the BTA did not have a legal duty to grant such a reduction for two reasons: (1) the record does not clearly establish the propriety of such an adjustment and (2) Knickerbocker, the party that had the burden of proving its entitlement to the adjustment, failed to request it at the BTA.

{¶ 22} When a board of revision's decision is appealed to the BTA, the BTA's duty is to "determine the taxable value of the property whose valuation or assessment by the county board of revision is complained of." R.C. 5717.03(B). In making that determination, the BTA must decide not only whether a proffered

sale price satisfies the criteria of recency and arm's-length character, but also what amount of the stated sale price pertains to the realty. Thus, if the record clearly establishes that a portion of a sale price pertains to personal property, the BTA should subtract that portion from the stated sale price to arrive at the amount of consideration paid for the realty. The latter figure will then constitute the true value of the realty.

{¶ 23} The present case does not fall within the rule just stated, because the record does not unequivocally establish a basis for allocating a portion of the sale price to the personal property that was transferred. The December 2003 purchase agreement does set forth a schedule of personal property that constituted part of the sale (basically room furnishings and some office equipment), but the agreement explicitly recites that no portion of the sale price was being paid for the intangible or tangible personalty that was transferred along with the apartment complex. Consistent with the contract itself, the conveyance-fee statement did not allocate any portion of the sale price to personal property. And although Knickerbocker's appraiser characterized the personal property as "appliance packages within each unit" and set the value of each package at $1,000, for a total of $300,000 ($1,000 per unit for 300 units), the appraisal contains no underlying analysis to validate that procedure.

{¶ 24} We have held that when real property is the subject of a sale and the sale involves an incidental transfer of tangible or intangible personal property, the proponent of allocating a portion of the sale price to assets other than the realty "bears an initial burden of showing the propriety of the allocation." *St. Bernard Self-Storage, L.L.C. v. Hamilton Cty. Bd. of Revision*, 115 Ohio St.3d 365, 2007-Ohio-5249, 875 N.E.2d 85, ¶ 14.[5] Although Knickerbocker has argued

5. In *St. Bernard Self-Storage*, the evidence did not suffice to support an allocation of $950,000 of the $1,950,000 sale price to "goodwill" that had been allegedly transferred as part of the sale. By contrast, the court and the BTA affirmed an allocation of $25,000 of the sale price to tangible

both in its notice of appeal and in its second proposition of law that the sale price should be reduced by an amount attributable to personal property, Knickerbocker failed to make that argument to the BTA. Instead, Knickerbocker confined its BTA brief to arguing that the BTA should not use the sale price to determine the value of the property at all. The BTA had no duty to reduce the sale price on account of the transfer of personal property because Knickerbocker did not ask for the reduction and because the record did not unequivocally establish the propriety of making such an allocation.

### Conclusion

{¶ 25} The BTA reviewed the evidence and concluded that Knickerbocker had not satisfied its burden to show that the December 2003 sale was not recent. That finding is supported by the record and merits our deference. Accordingly, we affirm the decision of the BTA.

Decision affirmed.

MOYER, C.J., and LUNDBERG STRATTON, O'DONNELL, and CUPP, JJ., concur.

PFEIFER, O'CONNOR, and LANZINGER, JJ., concur in part and dissent in part.

_____

**PFEIFER, J., concurring in part and dissenting in part.**

{¶ 26} I concur in the bulk of the majority opinion, but I dissent from its treatment of personal property as realty.

{¶ 27} It is undisputed that the sales price included personal property, primarily appliances. The property owner's appraiser presented unrebutted testimony that the personal property was valued at $1,000 per unit. Because there

personal property that was transferred with the real estate. Id. at ¶ 4. The BTA and the court allowed that allocation because it constituted a minimal portion of the sale price and was never contested by any party to the proceeding.

is no evidence to the contrary in the record, I would defer to the appraiser's valuation of the personal property. I conclude that the valuation of the property should be reduced by $300,000, $1,000 per unit times 300 units. Accordingly, I concur in part and dissent in part.

O'CONNOR and LANZINGER, JJ., concur in the foregoing opinion.

_____

Rich & Gillis Law Group, L.L.C., and Mark H. Gillis, for appellee Olentangy Local Schools Board of Education.

Sleggs, Danzinger & Gill Co., L.P.A., and Todd W. Sleggs, for appellant.

_____