SAPINA ET AL., APPELLANTS, *v.* CUYAHOGA COUNTY BOARD OF

REVISION ET AL., APPELLEES.

[Cite as *Sapina v. Cuyahoga Cty. Bd. of Revision,* 136 Ohio St.3d 188,

2013-Ohio-3028.]

*Taxation—Valuation of real property—Recent sale including unallocated*
*personal property—Procedure when record demonstrates that value being*
*appealed is wrong—Independent valuation by Board of Tax Appeals.*

(No. 2012-0883—Submitted May 7, 2013—Decided July 16, 2013.)

APPEAL from the Board of Tax Appeals, Nos. 2009-K-667 and 2009-K-816.

_____

**Per Curiam.**

{¶ 1} In this real-property-valuation case, the taxpayers, Ivica and
Katarina Sapina, acquired a two-story building in 2006, with two storefronts
below and two residential apartments upstairs. The real property was sold to them
as part of the same contract by which they acquired a business on the first floor of
the building. Thus, the asset purchase included personal property (restaurant
equipment plus a covenant not to compete) as well as the realty.

{¶ 2} For tax year 2007, the auditor used the entire aggregate purchase
price, $325,000, as the property value, even though that official had previously
determined the value for 2006 to be only $116,700. The Sapinas sought an
allocation of the purchase price to reduce the value of the realty, and the
Cuyahoga County Board of Revision ("BOR") reduced the value to $175,000.
Both the owners and the Euclid City School District Board of Education ("school
board") appealed to the BTA, which held a hearing and issued a decision
reinstating the $325,000 aggregate sale price as the value of the property.

**{¶ 3}** The Sapinas have appealed to this court, and we conclude that the adoption of the full sale price is unreasonable and unlawful. We therefore exercise our authority pursuant to R.C. 5717.04 to order that the value be modified to $160,000, an allocation supported by the mortgage loan secured by the real property.

## Facts

### A. Background

**{¶ 4}** On December 1, 2005, Ivica and Katarina Sapina entered into a purchase agreement under which the Sapinas acquired real property plus a carryout restaurant. The real property consisted of a lot improved with a two-story building in Euclid, Ohio. On the ground floor were two business spaces, one of which was occupied by a carryout restaurant that the Sapinas acquired as part of the deal. The other first-floor commercial space was vacant. Upstairs were two residential apartments let to tenants. The sale was consummated in February 2006.

**{¶ 5}** The purchase agreement set a contract price of $325,000 for all of the assets transferred under the agreement. Appended to the agreement is a list of personal property acquired as part of the carryout business, which includes such items as a walk-in cooler, two freezers, and metal tables for food preparation. The purchase agreement also contains a two-year covenant not to compete by the seller. But the agreement sets forth no allocation of the aggregate purchase price to individual assets.

### B. Proceedings before the BOR

**{¶ 6}** Although the original updated valuation for tax years 2006 and 2007 had been $116,700, the school board obtained an increase to the full aggregate sale price of $325,000 for tax year 2006, which the auditor then carried forward to tax year 2007. On January 7, 2008, the Sapinas filed a valuation complaint seeking a reduction to $125,000 for the 2007 tax year. The school

board filed a countercomplaint, seeking retention of the full purchase price as the value of the realty.

{¶ 7} On February 11, 2009, the BOR held a hearing at which Katarina Sapina appeared and testified. She also presented a written appraisal (but not testimony) of Donald Durrah, which found a value of $120,000 as of January 27, 2009 (the tax-lien date was more than two years earlier, January 1, 2007). Durrah performed a valuation under all three approaches and, placing the greatest weight on income capitalization, reconciled to a value of $120,000 as of January 27, 2009.

{¶ 8} Sapina presented additional documents at the BOR. First, she introduced a mortgage dated February 24, 2006, which the Sapinas had given to their credit union in conjunction with the asset purchase. The loan amount was $160,000 of the $325,000 purchase price. Second, she presented correspondence showing the Sapinas' attempts to amend the purchase agreement by allocating $160,000 to the realty and $165,000 to the personal property—although tendered to the sellers, the amendment was never signed. Ms. Sapina testified that there was no down payment, given the role of the credit union as mortgagee of the Sapinas' house.

{¶ 9} Delegates at the BOR requested that Ms. Sapina do research and work up a set of values for the used items of personal property listed on the appendix to the purchase agreement, and she complied. According to Sapina's workup, the tangible personal property associated with the carryout business had a value of about $38,172.60.

{¶ 10} Apparently based on Sapina's workup, a review of the appraisal, and other evidence in the record, the BOR itself allocated $150,000 to personal property and treated the remainder, $175,000, as the value of the realty. But the exact method by which the BOR reached that number is obscure; the BTA could not replicate the computation, and neither can we.

**C. Proceedings before the BTA**

{¶ 11} The BTA held a hearing at which the school board did not appear. Ms. Sapina again appeared and testified. She also presented the written appraisal report and testimony of Richard Linhart. Linhart performed an analysis under the income and sales comparison approaches to valuation and arrived, after reconciling the results of those two approaches, at a value of $100,000 as of January 1, 2007. Linhart's sole mention of the 2006 asset purchase was in a brief, one-paragraph section devoted to the history of the property: Linhart noted that the property was "transferred for $325,000" to the Sapinas, that the "sale of $325,000 include [sic] the business and personal property ie; [sic] restaurant equipment," and that "[t]he sale is currently under protest by the owners due to the inclusion of personal property with the real estate." The appraisal otherwise ignores the 2006 sale as a basis for determining the value of the realty as of January 1, 2007.

{¶ 12} At the BTA hearing, Linhart offered his opinion as to using the $325,000 sale price as a basis for valuing the property: "After looking at the Purchase Agreement I noticed all the personalty that was involved, including fixtures, and goodwill, and the noncompete clause, which all is value—has value to the subject business, not the real estate." Asked whether he thought the $325,000 sale price was "excessive for the property" that he had been hired to appraise, Linhart said, "For the real estate, yes, sir." Asked whether he relied on the sale price in preparing his appraisal, Linhart testified, "Not at all." Later, the hearing examiner asked Linhart what materials he had reviewed in conjunction with the 2006 sale, and Linhart answered that he had reviewed the data in the county's database, and the sales contract itself. Linhart did not, however, review the conveyance-fee statement.

{¶ 13} By mail, the school board submitted a copy of the conveyance-fee statement to the BTA prior to the hearing. The document shows $325,000 being

reported as consideration for the real property, while indicating that $160,000 was paid subject to a mortgage.

{¶ 14} In its decision, the BTA cited the legal precepts that favor the use of a recent, arm's-length sale price over an appraisal and noted that although the Sapinas had reported the entire $325,000 sale price as consideration paid for the realty, they now sought to prove that the reported amount was inaccurate. *Sapina v. Cuyahoga Cty. Bd. of Revision*, BTA Nos. 2009-K-667 and 2009-K-816, 2012 WL 1494009, *4 (Apr. 24, 2012). On the basis of the cited case law, the BTA declined to accept the Linhart appraisal value. As for allocating the purchase price, the BTA "[did] not question Ms. Sapina's veracity or that items of personal property may have also been acquired as part of the sale," but nonetheless found that "the evidence offered is insufficient to 'unequivocally establish a basis for allocating a portion of the sale price to the personal property that was transferred.' " *Id*., quoting *Olentangy Local Schools Bd. of Edn. v. Delaware Cty. Bd. of Revision*, 125 Ohio St.3d 103, 2010-Ohio-1040, 926 N.E.2d 302, ¶ 23. The BTA also noted that the BOR had reduced the property value to $175,000, but stated that it was "unable to discern upon what evidence the BOR relied in doing so or replicate its finding of value." *Id*. The BTA therefore felt constrained to reinstate the entire purchase price of $325,000 as the property value for tax year 2007.

### Analysis

{¶ 15} "The fair market value of property for tax purposes is a question of fact, the determination of which is primarily within the province of the taxing authorities, and this court will not disturb a decision of the Board of Tax Appeals with respect to such valuation unless it affirmatively appears from the record that such decision is unreasonable or unlawful." *Cuyahoga Cty. Bd. of Revision v. Fodor*, 15 Ohio St.2d 52, 239 N.E.2d 25 (1968), syllabus. But although the BTA is responsible for determining factual issues, we " 'will not hesitate to reverse a

BTA decision that is based on an incorrect legal conclusion.' " *Satullo v. Wilkins*, 111 Ohio St.3d 399, 2006-Ohio-5856, 856 N.E.2d 954, ¶ 14, quoting *Gahanna-Jefferson Local School Dist. Bd. of Edn. v. Zaino*, 93 Ohio St.3d 231, 232, 754 N.E.2d 789 (2001). Pursuant to R.C. 5717.04, the statute that creates the remedy of appeal to this court from decisions of the BTA, we may either reverse a decision of the BTA or modify it if we find that the decision is unreasonable or unlawful.

{¶ 16} The present case confronts us with the issue whether the BTA acted reasonably and lawfully when it adopted the entire 2006 sale price, $325,000, as the value of the Sapinas' property. The primary alternative advanced by the Sapinas was an appraisal of the real property that ignored the 2006 sale price and reached an opinion that the value was $100,000 on the tax-lien date. The issue presents a mixed question of law and fact, which makes it necessary to consider it within the legal framework developed in the case law for bulk-sale cases.

### A. The BTA applied the wrong standard in evaluating the evidence concerning allocation of the aggregate sale price

{¶ 17} The BTA declined to make an allocation of the purchase price on the grounds that the record did not "unequivocally establish" the propriety of such an allocation. The BTA derived that standard from *Olentangy Local Schools*, 125 Ohio St.3d 103, 2010-Ohio-1040, 926 N.E.2d 302, ¶ 23. But as the cited passage from the decision shows, the property owner in *Olentangy* argued for an allocation to personal property *before the court*, but had not advanced that argument *before the BTA*. *Id*. at ¶ 24. Thus, *Olentangy Local Schools* involved the application, on appeal, of a plain-error standard: because the owner had waived allocation, only plain error could be corrected on appeal. *See Plain Local Schools Bd. of Edn. v. Franklin Cty. Bd. of Revision*, 130 Ohio St.3d 230, 2011-Ohio-3362, 957 N.E.2d 268, ¶ 20-21.

**{¶ 18}** By stark contrast, the Sapinas have consistently argued for allocation. Accordingly, the applicable standard is whether the record contains "corroborating indicia" or "best available evidence" that supports an allocation of the aggregate purchase price. *St. Bernard Self-Storage, L.L.C. v. Hamilton Cty. Bd. of Revision*, 115 Ohio St.3d 365, 2007-Ohio-5249, 875 N.E.2d 85, ¶ 17 ("In bulk-sale cases, we typically look for corroborating indicia to ensure that the allocation reflects the true value of the property"); *Hilliard City Schools Bd. of Edn. v. Franklin Cty. Bd. of Revision*, 128 Ohio St.3d 565, 2011-Ohio-2258, 949 N.E.2d 1, ¶ 18, 27 (using "best available evidence" in the form of a bank appraisal of personal property to determine allocation of asset purchase price to the personal property).

**{¶ 19}** Applying the more relaxed standard—that a proposed allocation need only be "corroborated"—makes the proper inquiry a very different one.

**B. Using the entire aggregate sale price to value the realty was error**

*1. Under the case law, an allocation of the aggregate sale price is preferred to an appraisal that ignores the sale*

**a. Using sale price to determine value**

**{¶ 20}** At the time at issue in this case, former R.C. 5713.03 stated that when "determining the true value of any tract, lot, or parcel of real estate," the county auditor in his role as tax assessor "*shall* consider the sale price of such tract, lot, or parcel to be the true value for taxation purposes" if the sale was an "arm's length" one that had occurred "within a reasonable time, either before or after the tax lien date." (Emphasis added.) 1983 Am.Sub.H.B. No. 260, 140 Ohio Laws, Part II, 2722. The court has construed this provision as a legislative mandate that a recent arm's-length sale price be used as the criterion of the property's value unless the opponent of using the sale price can mount a successful challenge to the arm's-length character or the recency of the sale. *See Cummins Property Servs., L.L.C. v. Franklin Cty. Bd. of Revision*, 117 Ohio St.3d

516, 2008-Ohio-1473, 885 N.E.2d 222, ¶ 13, citing *Berea City School Dist. Bd. of Edn. v. Cuyahoga Cty. Bd. of Revision*, 106 Ohio St.3d 269, 2005-Ohio-4979, 834 N.E.2d 782. That mandate entails the rejection of appraisal evidence of the value of the property whenever a recent, arm's-length sale price has been offered as evidence of value. *Id.*[1]

{¶ 21} Dovetailing with the *Berea* line of cases is the case law addressing the situation in which real property is transferred as part of a larger sale that includes assets other than the parcel at issue—a situation that the court has referred to as a "bulk sale" in a nontechnical sense.[2] In the bulk-sale area, the court has adhered to "two overarching principles." *FirstCal Indus. 2 Acquisitions, L.L.C. v. Franklin Cty. Bd. of Revision*, 125 Ohio St.3d 485, 2010-Ohio-1921, 929 N.E.2d 426, ¶ 17. First, the " 'best evidence of "true value in money" is the proper allocation of the lump-sum purchase price and not an appraisal ignoring the contemporaneous sale.' " *Id.*, quoting *Conalco, Inc. v. Monroe Cty. Bd. of*

---

1. In their reply brief and at oral argument, the Sapinas argued that the court should apply the version of R.C. 5713.03 as amended by Am.Sub.H.B. No. 487, effective September 10, 2012, as itself amended by Am.Sub.H.B. No. 510, effective March 27, 2013. H.B. 487 amended R.C. 5713.03 to state that the auditor "may" use the arm's-length sale price, rather than stating that the auditor "shall" do so. On the one hand, this is a belated argument that would usually be barred by not having been timely raised. However, the legislation is brand new, so the argument could not have been raised earlier. In any event, we find that the amendment is inconsequential in this case. If H.B. 487 and H.B. 510 constitute a clarification of prior law, we are justified in applying the case law under former R.C. 5713.03 without according the new statute any great significance. Alternatively, amended R.C. 5713.03 may have substantively changed the law—but if that is so, the case law establishes that we must apply the substantive tax law that was in effect during the tax year at issue—i.e., tax year 2007. *See Giant Tiger Drugs, Inc. v. Kosydar*, 43 Ohio St.2d 103, 107-108, 330 N.E.2d 917 (1975) (applying sales-tax exemption law in effect during the audit period—i.e., the period when the transactions occurred that were subject to taxation—and declining to apply a later amendment to the exemption); *Akron Home Med. Servs., Inc. v. Lindley*, 25 Ohio St.3d 107, 110, 495 N.E.2d 417 (1986) (same).

2. There is some reason to think that the Sapinas might have overpaid in the aggregate for the assets. That issue would ultimately concern the arm's-length character of the sale, which calls for a seller and buyer who act with " 'knowledge of all the relevant facts.' " *See Worthington City Schools Bd. of Edn. v. Franklin Cty. Bd. of Revision*, 129 Ohio St.3d 3, 2011-Ohio-2316, 949 N.E.2d 986, ¶ 22, fn. 2, quoting Ohio Adm.Code 5703-25-05(A)(1) and (2). But because the

*Revision*, 50 Ohio St.2d 129, 363 N.E.2d 722 (1977), paragraph two of the syllabus. In this context, the court has said that "[t]he crucial issue that arises in proposing the use of an *allocated* sale price is the propriety of the allocation for tax-valuation purposes." (Emphasis sic.) *Bedford Bd. of Edn. v. Cuyahoga Cty. Bd. of Revision*, 132 Ohio St.3d 371, 2012-Ohio-2844, 972 N.E.2d 559, ¶ 20. Accordingly, a proposed allocation of purchase price must typically be supported by " 'corroborating indicia' " that establish the propriety of the allocation. *Id.*, quoting *St. Bernard Self-Storage, L.L.C. v. Hamilton Cty. Bd. of Revision*, 115 Ohio St.3d 365, 2007-Ohio-5249, 875 N.E.2d 85, ¶ 15-19.

{¶ 22} The second of the two overarching principles is that " 'the BTA is not required, in every instance, and in all events, to accept as the true value in money of real property, an allocation of a portion of a lump-sum purchase price paid for a group of assets which included the property in question.' " *FirstCal*, ¶ 18, quoting *Consol. Aluminum Corp. v. Monroe Cty. Bd. of Revision*, 66 Ohio St.2d 410, 414, 423 N.E.2d 75 (1981). In a situation in which the propriety of the allocation has not been shown, the BTA must choose between two alternatives. Either the BTA uses the entire purchase price as the criterion of value for the property or the BTA disregards the purchase price and looks at other evidence of value (such as an appraisal of the parcel at issue). *Compare St. Bernard Self-Storage*, 115 Ohio St.3d 365, 2007-Ohio-5249, 875 N.E.2d 85 (entire purchase price in excess of $25,000 allocation to personal property held to constitute the value of the property), *with Consol. Aluminum*, 66 Ohio St.2d at 414, 423 N.E.2d 75.

{¶ 23} This second course of action is not appropriate in this case. *Consol. Aluminum* involved a sale of an entire business division with numerous assets, consisting of real and personal property, the latter both tangible and

---

Sapinas have never contended that they did not properly inform themselves and therefore overpaid for the assets, we do not address the issue. *Id*.

intangible, located both in and outside Ohio. The court accepted the BTA's finding that because of "complexities of the sale," it was "not possible to make an allocation of a portion of a lump-sum purchase price paid for Olin's entire aluminum division to the Hannibal property." *Consol. Aluminum* at 414. No such complexities have been found to exist in this case, which is much more straightforward.

### b. The BTA's duty is to (i) weigh evidence and (ii) determine value

{¶ 24} In the present case, the auditor used the aggregate sale price to set the value for the property for tax year 2007, and the BOR ordered a reduction whose basis was obscure. The case law provides guidance as to how the BTA should act when a board of revision decision has been appealed.

{¶ 25} One principle of general importance is that the BTA has the duty, in a real-property-valuation case, to " ' "independently weigh and evaluate all evidence properly before it" ' in arriving at its own decision." *Vandalia-Butler City Schools Bd. of Edn. v. Montgomery Cty. Bd. of Revision*, 130 Ohio St.3d 291, 2011-Ohio-5078, 958 N.E.2d 131, ¶ 13, quoting *Hilliard City Schools Bd. of Edn. v. Franklin Cty. Bd. of Revision*, 128 Ohio St.3d 565, 2011-Ohio-2258, 949 N.E.2d 1, ¶ 17, quoting *Columbus Bd. of Edn. v. Franklin Cty. Bd. of Revision*, 76 Ohio St.3d 13, 15, 665 N.E.2d 1098 (1996).

{¶ 26} The "first rule" in an appeal from the board of revision is that "the party challenging the board of revision's decision at the BTA has the burden of proof to establish its proposed value as the value of the property." *Colonial Village Ltd. v. Washington Cty. Bd. of Revision*, 123 Ohio St.3d 268, 2009-Ohio-4975, 915 N.E.2d 1196, ¶ 23, citing *Dayton-Montgomery Cty. Port Auth. v. Montgomery Cty. Bd. of Revision*, 113 Ohio St.3d 281, 2007-Ohio-1948, 865 N.E.2d 22, ¶ 15. Here, both the Sapinas and the school board appealed from the reduced valuation determined by the BOR; the Sapinas shouldered the burden of

showing a lower value, while the school board relied on the sale information to assert the propriety of using the sale price.

{¶ 27} A special situation is presented when the record as developed "negates the validity of the county's valuation of the property." *Colonial Village*, ¶ 24. In that situation, the BTA acquires "the legal duty * * * to determine whether the record as developed by the parties contain[s] sufficient evidence to permit an independent valuation of the property" by the BTA. *Id*. at ¶ 25. If the record contains such evidence, the BTA should perform an independent valuation. *Id.*

{¶ 28} Finally, when performing an independent valuation, the BTA is not bound by the values advocated by the parties—indeed, the statutory language calls for the BTA on appeal from the BOR to "determine the taxable value of the property." R.C. 5717.03(B). The same language in R.C. 5717.05 has been construed by this court, in the context of an appeal from the board of revision to the common pleas court: the taxpayer's valuation complaint "places neither minimum nor maximum limitations on the court's determination of value, and there are none save the judicial requirement that the determination be supported by the evidence." *Jones & Laughlin Steel Corp. v. Lucas Cty. Bd. of Revision*, 40 Ohio St.2d 61, 63, 320 N.E.2d 658 (1974), cited with approval in *Cleveland Elec. Illum. Co. v. Lake Cty. Bd. of Revision*, 80 Ohio St.3d 591, 596, 687 N.E.2d 723 (1998).

2. *The appraisal the Sapinas offered at the BTA ignores the 2006 sale price*

{¶ 29} The Sapinas attempted to show an allocation by presenting an appraisal of the real property itself as of the tax-lien date, January 1, 2007. That appraisal determined the value to be $100,000. For three reasons, the BTA acted properly in rejecting the appraisal as definitive evidence of value.

{¶ 30} First, allowing the appraisal as the principal or sole means of allocating the aggregate purchase price violates the precept that an appraisal of

realty should not substitute for the arm's-length sale price. More typically, an allocation of sale price is proper when the value of personal property has been determined and subtracted from the aggregate price, thereby leaving the remainder of the sale price as the value of the realty. *See Hilliard City Schools*, 128 Ohio St.3d 565, 2011-Ohio-2258, 949 N.E.2d 1.

{¶ 31} Second, $100,000 seems an unduly low valuation in light of the entire record. The auditor originally valued the property at $116,700 for tax year 2006, before applying the 2006 asset-purchase price to 2007; the credit union was willing to use the realty as collateral for a $160,000 loan; and the appraisal presented at the BOR determined that the value was $120,000 in January 2009.

{¶ 32} Third, assigning only $100,000 to the property means that more than two-thirds of the $325,000 aggregate price—$225,000—reflects the value of tangible and intangible personal property, which the record does not support and which seems implausible.

{¶ 33} For all these reasons, the BTA correctly declined to rely on the Linhart appraisal.

*3. The BTA correctly rejected the BOR's reduced valuation*

{¶ 34} Once the Linhart appraisal was ruled out, the BTA was left to choose between (i) reverting to the auditor's valuation, which used the entire aggregate sale price to value the realty, (ii) adopting the BOR's reduced valuation, and (iii) performing an independent valuation based on the record.

{¶ 35} The BTA correctly ruled out using the BOR's reduced value, because it could not replicate it. This court has emphatically held that the BTA's independent duty to weigh evidence precludes a presumption of validity of the BOR's valuation. *Vandalia-Butler City Schools*, 130 Ohio St.3d 291, 2011-Ohio-5078, 958 N.E.2d 131, ¶ 13.

*4. The record negated the auditor's use of the aggregate sale price,*
*while also furnishing a basis for independent valuation*

{¶ 36} The record also strongly negates using the entire $325,000 asset-purchase price as the value of the realty. Just as the Linhart appraisal opinion of $100,000 seems low, $325,000 appears well above all other indications of value in the record, and the sale did manifestly include personal-property assets that had some value. Thus, the BTA's decision to revert to the aggregate sale price is unreasonable and unlawful under the circumstances.

{¶ 37} Although the Sapinas have understandably aimed to obtain the lower values found by their appraisers—$120,000 in the Durrah appraisal presented to the BOR and $100,000 in the Linhart appraisal presented to the BTA—they have created a record that demonstrates an allocated value that is higher: $160,000. Namely, the loan secured by the mortgage was a $160,000 loan, meaning that the lender viewed the property as having sufficient value to serve as collateral for that loan amount, and the Sapinas were apparently not required to make a downpayment. The propriety of using this figure as the allocated value of the real property satisfies the standard of "corroborating indicia," and the breakout of the $160,000 amount secured by the mortgage is reflected both on the conveyance-fee statement and in the mortgage instrument presented as an exhibit before the BOR.

{¶ 38} We have previously had occasion to order a modified allocation of purchase price under analogous circumstances. In *Hilliard City Schools*, 128 Ohio St.3d 565, 2011-Ohio-2258, 949 N.E.2d 1, a motel was purchased as an ongoing business. Accordingly, the assets involved in the purchase included (1) the real property itself, (2) the personal-property furnishings of the motel rooms, which fall into the category of "furniture, fixtures & equipment" ("FF&E"), (3) certain more transient inventory items, and (4) an alleged transfer of the right to use the hotel-chain name and logo. The aggregate purchase price was $3,600,000.

**{¶ 39}** In *Hilliard*, the BTA had authorized an allocation to FF&E from the aggregate sale price of an entire motel as a going concern. The BTA relied on a year-end financial statement to sustain an $800,000 allocation to the FF&E. In reviewing the BTA's decision, we determined that because the basis for the financial statement was unexplained and because it was prepared long after the purchase, the BTA's reliance on it was unreasonable and unlawful. That was particularly true, given that a bank appraisal contemporaneous to the purchase attached a value of $280,000 to the FF&E.

**{¶ 40}** On appeal, we concluded that "the $280,000 figure in the appraisal report constitutes the best available evidence for the value of the FF&E," emphasizing that "the issue before us is what value the parties attached to the personal property in connection with the sale of the hotel as a going concern." *Id*. at ¶ 27. We noted that "the December 2004 appraisal presents an estimation of value apparently relied upon by [the purchaser's] lender" and that at the time of sale it was "within the contemplation of the parties." *Id.*

**{¶ 41}** Similarly, as to the property at issue here, the negotiation of the credit-union loan and the closing of the entire purchase agreement occurred in the time frame December 2005 through February 2006. The loan amounts were within the contemplation of the parties and furnish corroboration for an allocation to realty that seems plausible within the entire context of the transaction. That plausibility becomes more compelling in the present context, where the totality of the evidence strongly militates against adopting the entire aggregate sale price as the value of the realty.

### Conclusion

**{¶ 42}** For the foregoing reasons, the BTA properly rejected the BOR's reduction of value but acted unreasonably and unlawfully by reverting to the entire aggregate sale price as the value of the realty. Pursuant to R.C. 5717.04,

we therefore order that the value of the property for tax year 2007 be modified to $160,000.

Judgment accordingly.

O'CONNOR, C.J., and PFEIFER, O'DONNELL, LANZINGER, KENNEDY, FRENCH, and O'NEILL, JJ., concur.

_____

Siegel Jennings Co., L.P.A., Victor Anselmo, J. Kieran Jennings, and Jason P. Lindholm, for appellant.

Britton, Smith, Peters & Kalail Co., L.P.A., Karrie M. Kalail, and Michael E. Stinn, for appellee Euclid City School District Board of Education.

Timothy J. McGinty, Cuyahoga County Prosecuting Attorney, and Saundra Curtis-Patrick, Assistant Prosecuting Attorney, for appellees Cuyahoga County Board of Revision and Cuyahoga County Fiscal Officer.

_____