[Cite as *Columbus City Schools Bd. of Edn. v. Franklin Cty. Bd. of Revision*, 2013-Ohio-4504.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Board of Education of the<br>Columbus City Schools, | : | |
| | : | |
| Appellant-Appellee, | : | |
| | : | |
| v. | | No. 12AP-682 |
| | : | (BTA No. 2009-Q-932) |
| Franklin County Board of Revision and<br>The Franklin County Auditor, | : | (REGULAR CALENDAR) |
| | | |
| Appellees-Appellees, | : | |
| | | |
| (Kaufmann Executive Drive, LLC et al., | : | |
| | | |
| Appellees-Appellants). | : | |

D E C I S I O N

Rendered on October 10, 2013

*Rich & Gillis Law Group, Mark H. Gillis* and *Kelley A. Gorry,*
for appellee Board of Education of the Columbus City Schools.

*Shumaker, Loop & Kendrick, LLP, W. Reed Hauptman,
Scott R. Branam,* and *Adam M. Galat,* for appellants
Kaufmann Executive Drive, LLC and Checkers Drive-In
Restaurants, Inc.

APPEAL from the Board of Tax Appeals

DORRIAN, J.

{¶ 1} Appellees-Appellants, Kaufmann Executive Drive, LLC ("Kaufmann"), and Checkers Drive-In Restaurants, Inc. ("Checkers") (collectively "appellants"), appeal from a decision and order of the Board of Tax Appeals ("BTA") determining the taxable value of certain real property for tax year 2008. Because we conclude that the BTA's decision was not unreasonable or unlawful, we affirm.

{¶ 2} The real property that is the subject of this appeal consists of two adjacent parcels located in the Columbus City School District taxing district. The parcels contain a fast-food restaurant and an adjacent parking lot. As of 2007, the property was owned by an entity called Baker/MCB, LLC ("Baker"), while another entity, called Setla, LLC ("Setla") operated the fast-food restaurant on the property under a lease agreement. In 2007, Setla negotiated a purchase of the property from Baker for $275,000 (the "Baker-Setla sale"). The limited warranty deed evidencing this transaction was time-stamped by the Franklin County Recorder's Office on May 8, 2007, at 3:53 p.m. Setla subsequently entered into a sale and leaseback transaction of the property with Kaufmann (the "Setla-Kaufmann sale and leaseback transaction"). In the sale component of the transaction, Kaufmann purchased the property from Setla for $675,000 (the "Setla-Kaufmann sale"). The leaseback component of the transaction provided that Setla would lease the property from Kaufmann for a twenty-year term, with options to renew for four five-year terms, under a "triple-net lease" (the "Setla-Kaufmann lease agreement"). The limited warranty deed evidencing the Setla-Kaufmann sale was time-stamped by the Franklin County Recorder's Office on May 8, 2007, at 3:54 p.m.

{¶ 3} The Franklin County Auditor ("Auditor") calculated the total value of both parcels as being $216,800. Appellant-appellee, the Columbus City School District Board of Education ("Board of Education"), filed a complaint with the Franklin County Board of Revision ("BOR"), against the valuation of the property for tax year 2007, asserting that the property should have been valued at $675,000 based on the price paid in the Setla-Kaufmann sale. Setla filed a counter-complaint, asserting that the Auditor's valuation of $216,800 should be retained because the Setla-Kaufmann sale did not constitute an arm's-length transaction. The BOR ultimately increased the valuation of the parcel containing the fast-food restaurant for tax year 2007 and 2008, thereby increasing the total property valuation to $275,000 for both tax years.

{¶ 4} The Board of Education appealed the BOR's decision to the BTA. Because the parties indicated that they did not dispute the BOR's valuation decision for tax year 2007, the BTA limited its analysis to determining the proper valuation for tax year 2008.

{¶ 5} While the BTA appeal was pending, Setla was also involved in bankruptcy proceedings in a federal bankruptcy court in the state of Delaware. As part of the

bankruptcy proceedings, Checkers assumed Setla's obligations under the Setla-Kaufmann lease agreement. Checkers filed a motion for substitution with the BTA seeking to substitute itself for Setla. The BTA denied Checkers' motion for substitution and subsequent motion for reconsideration of the order denying its motion for substitution.

{¶ 6}   With respect to the merits of the appeal, the BTA concluded that both the Baker-Setla sale and the Setla-Kaufmann sale were arm's-length transactions. The BTA further held that, because the Setla-Kaufmann sale was more recent to the tax lien date for tax year 2008, the price paid in that sale constituted the best evidence of the property's value as of January 1, 2008. Therefore, the BTA concluded that the total value of the property for tax year 2008 was $675,000 and ordered the BOR to assess taxes on the property in conformance with that valuation.

{¶ 7}   Appellants appeal from the BTA's decision and order, assigning ten errors for this court's review:

> [1.] The Decision and Order of the BTA is unreasonable and unlawful because it determined "the true value of each separate tract, lot, or parcel of real property and of buildings, structures, and improvements located thereon" in a manner that is inconsistent with the legislative intent expressed by the Ohio General Assembly in R.C. 5713.03 and R.C. 5701.02.
>
> [2.] The Decision and Order of the BTA is unreasonable and unlawful because it fails to comply with R.C. 5713.03 by determining the value of real property based upon transactions that were not entered at arm's-length.
>
> [3.] The Decision and Order of the BTA is unreasonable and unlawful because it determines the value of the real property based upon the anticipated business success, good-will, and creditworthiness of a tenant under a lease, rather than the [sic] determining the value of the underlying real property, buildings, structures, and improvements.
>
> [4.] The Decision and Order of the BTA is unreasonable and unlawful because it determines the value of the real property by applying a rigid, bright-line rule, instead of considering the unique circumstances of this case and determining value based upon the weight and sufficiency of the evidence, which involves two separate transactions entered only one-minute apart.

[5.] The Decision and Order of the BTA is unreasonable and unlawful because it determines the value of the real property based upon an easily identifiable financing transaction that is separable from the underlying value of the real property.

[6.] The Decision and Order of the BTA is unreasonable and unlawful because the BTA lacked jurisdiction to render such a decision.

[7.] The Decision and Order of the BTA is unreasonable and unlawful because the due process rights of Checkers were violated when the BTA twice denied a meaningful opportunity to be heard to Checkers, the entity who will ultimately be responsible for paying the real estate taxes under an assigned lease that was the subject of an order issued by the United States Bankruptcy Court of the District of Delaware.

[8.] The Decision and Order of the BTA is unreasonable and unlawful because it constitutes a collateral attack on an order issued by the United States Bankruptcy Court of the District of Delaware.

[9.] The Decision and Order of the BTA is unreasonable and unlawful because it violates an order issued by the United States Bankruptcy Court of the District of Delaware.

[10.] The Decision and Order of the BTA is unreasonable and unlawful because it failed to consider the arguments that Checkers would have presented with respect to the impact of the former tenant's bankruptcy proceedings on the potential liability of Checkers.

{¶ 8} An appellate court reviews a decision of the BTA to determine whether it is reasonable and lawful. *HIN, L.L.C. v. Cuyahoga Cty. Bd. of Revision*, 124 Ohio St.3d 481, 2010-Ohio-687, ¶ 13. "It is well settled that [an appellate] court will defer to factual determinations of the BTA if the record contains reliable and probative support for them." *Strongsville Bd. of Edn. v. Wilkins*, 108 Ohio St.3d 115, 2006-Ohio-248, ¶ 7. The Supreme Court of Ohio has held that the fair market value of a property for tax purposes is a question of fact and that a reviewing court will not disturb a decision of the BTA with respect to the valuation unless it affirmatively appears from the record that the decision is unreasonable or unlawful. *Worthington City Schools Bd. of Edn. v. Franklin Cty. Bd. of Revision*, 129 Ohio St.3d 3, 2011-Ohio-2316, ¶ 18. "The BTA's findings of fact are to be

affirmed if supported by reliable and probative evidence, and the BTA's determination of the credibility of witnesses and its weighing of the evidence are subject to a highly deferential abuse-of-discretion review on appeal." *Id.*

{¶ 9} In their first five assignments of error, appellants challenge the BTA's decision, arguing that it was unreasonable and unlawful in the way that the BTA calculated the value of the property. Because the first five assignments of error are interrelated, we will address them together.[1]

{¶ 10} Under R.C. 5713.03, when a property "has been the subject of an arm's length sale between a willing seller and a willing buyer within a reasonable length of time either before or after the tax lien date, the auditor may consider the sale price of [the property] to be the true value for taxation purposes." The Supreme Court of Ohio has held that, under this statute "when [a] property has been the subject of a recent arm's-length sale between a willing seller and a willing buyer, the sale price of the property shall be 'the true value for taxation purposes.' " *Berea City School Dist. Bd. of Edn. v. Cuyahoga Cty. Bd. of Revision*, 106 Ohio St.3d 269, 2005-Ohio-4979, ¶ 13, quoting R.C. 5713.03. When a school board seeks an increase in property valuation, the presentation of basic evidence of a sale and the sale price creates a rebuttable presumption that the sale price reflects the value of the property. This places a burden on the owner to rebut that presumption. *N. Royalton City School Dist. Bd. of Edn. v. Cuyahoga Cty. Bd. of Revision*, 129 Ohio St.3d 172, 2011-Ohio-3092, ¶ 11. "Under *Berea*, [a recent, arm's-length] sale price is deemed to be the value of the property, and the only rebuttal lies in challenging whether the elements of recency and arm's-length character between a willing seller and a willing buyer are genuinely present for that particular sale." *Cummins Property Servs., L.L.C. v. Franklin Cty. Bd. of Revision*, 117 Ohio St.3d 516, 2008-Ohio-1473, ¶ 13.

{¶ 11} Appellants argue that the Setla-Kaufmann sale was not an arm's-length transaction and that, therefore, the BTA acted unreasonably and unlawfully by adopting the Setla-Kaufmann sale price as the value of the property. Appellants claim that the Setla-Kaufmann sale and leaseback transaction was a "financing transaction" which did

---

[1] Although appellants appear to raise various arguments in their first through fifth assignments of error, appellants' brief focuses only on the arm's-length transaction issue, specifically asserting that the parties were related and that the sale lacked open-market elements. Therefore, we will limit our discussion to the same.

not reflect the true value of the property. They assert that the Baker-Setla sale, by contrast, was an arm's-length transaction and that, because the Baker-Setla sale was recorded only one minute before the Setla-Kaufmann sale, it reflects the true value of the property.

{¶ 12} An arm's-length transaction has three primary characteristics: (1) it is voluntary; (2) it takes place on the open market; and (3) the parties act in their own self-interest. *N. Royalton* at ¶ 24. Appellants concede that there was no evidence of collusion between Setla and Kaufmann, thus demonstrating that the transaction was voluntary, but argue that the parties did not act in their own self-interest because they were related and that the sale did not occur on the open market. Therefore, we will consider the self-interest and open-market aspects of the Setla-Kaufmann sale and leaseback transaction.

{¶ 13} "The allegation that parties to a sale are related bears on whether they are self-interested for purposes of R.C. 5713.03. That is so because related parties may be pursuing the identical interest of common owners rather than acting as separately interested, typically motivated actors in the marketplace." *N. Royalton* at ¶ 33. The Supreme Court of Ohio has acknowledged that, although related parties can make property transfers at fair market prices, "a sale transacted between related parties should not qualify as the criterion of value without an affirmative demonstration that the price actually reflects fair market value in spite of the relationship of the parties." *Id.*

{¶ 14} Appellants argue that Setla and Kaufmann were related parties and that the BTA's decision was unreasonable and unlawful because the Board of Education did not make an affirmative demonstration that the sale price reflected the fair market value of the property. Appellants assert that Setla and Kaufmann were related parties based on the fact that Kaufmann previously purchased a property in Arkansas where Setla operated a fast-food restaurant franchise. Appellants also claim that the Setla-Kaufmann sale and leaseback transaction created buyer-seller and landlord-tenant relationships between the parties. The BTA found that, despite their business relationship, Setla and Kaufmann each acted in its own self-interest in conducting the transaction.

{¶ 15} In several cases, the Supreme Court of Ohio has affirmed BTA decisions ruling that the sale price from a sale-leaseback transaction did not establish the true value of the relevant property. *See S. Euclid/Lyndhurst Bd. of Edn. v. Cuyahoga Cty. Bd. of*

*Revision*, 74 Ohio St.3d 314 (1996); *Cleveland Hts./Univ. Hts. Bd. of Edn. v. Cuyahoga Cty. Bd. of Revision*, 72 Ohio St.3d 189 (1995); *Kroger Co. v. Hamilton Cty. Bd. of Revision*, 67 Ohio St.3d 145 (1993). The court explained the potential concerns arising from a sale-leaseback transaction in *Cummins Property Servs.* The court noted that a sale-leaseback transaction may be designed to avoid property tax and that a willing buyer would pay less for a property if the leaseback limited the amount of rent that could be collected from the property. *Id.* at ¶ 30. Appellants argue that this case presents the converse of *Cummins*—i.e., Kaufmann was willing to pay a higher price for the property because of the increased rental rate under the triple-net lease. However, in two more recent decisions, the court concluded that a sale-leaseback transaction could constitute an arm's-length transaction for valuation purposes. *See CCleveland OH Realty I, L.L.C. v. Cuyahoga Cty. Bd. of Revision*, 121 Ohio St.3d 253, 2009-Ohio-757; *AEI Net Lease Income & Growth Fund v. Erie Cty. Bd. of Revision*, 119 Ohio St.3d 563, 2008-Ohio-5203.

{¶ 16} The *AEI* case involved a similar scenario to the present appeal. The property in question contained a restaurant operated by Apple American Group ("Apple American"). In 2003, Apple American bundled the property together with 25 other properties and sold them to an entity called Preco. Preco then leased the properties back to Apple American. *AEI* at ¶ 4-5. The lease for the property at issue was a triple-net lease with a twenty-year term and multiple five-year renewal options, with specified rental rates for the term of the lease in five-year increments. *Id.* at ¶ 6. Preco subsequently sold the relevant property to AEI for $2,788,658 in May 2004. The county auditor set a tax value of $896,040 for the property. The local school district filed a complaint requesting that the May 2004 sale price be used as the value of the property. The county board of revision adopted the sale price as the value; the BTA also adopted the sale price as the value of the property. *Id.* at ¶ 8-9. On appeal, the Supreme Court of Ohio rejected the argument that the long-term lease imposed under the sale-leaseback transaction elevated the sale price of the property beyond its actual worth. The Supreme Court held that "the fact that [a] property is encumbered by a long-term lease does not by itself establish that the sale price must be adjusted to arrive at true value." *Id.* at ¶ 13. Moreover, "[t]o the extent that an existing long-term lease generates revenue above or below market, the existence of the

lease will tend to increase or decrease the value of the fee interest in the property." *Id.* The Supreme Court affirmed the BTA's decision adopting the sale price as the value of the property. *Id.* at ¶ 30.

{¶ 17} Although facts in *AEI* involved a second sale of the property after the sale-leaseback transaction, we find the court's reasoning useful in examining this appeal. In *AEI*, the Supreme Court considered whether the initial sale-leaseback transaction constituted an arm's-length transaction. *Id.* at ¶ 21. The Supreme Court explained that "the concern associated with sale-leaseback transactions lies in collusion between the parties to depress property value for tax purposes." *Id.* at ¶ 20. The Supreme Court concluded that the sale-leaseback in *AEI* was an arm's-length transaction because each party "manifestly pursued its objective to obtain maximum value from the transaction." *Id.* at ¶ 21. As the Supreme Court explained:

> For its part, Apple American sought to realize the value of the fee interest by selling the real property to obtain operating capital; on the other side of the deal, Preco sought to realize value from purchasing the fee interest by encumbering the property with a lease that provided a stream of rent income—income that would allow Preco to sell the property at a premium in the net-lease market. The fact that the rent rose in accordance with the amount of cash "financing" that Apple American desired does not mean that the sale-leaseback, taken as a whole, is anything but an arm's-length transaction.

*Id. See also CCleveland* at ¶ 7 ("Nothing in the record of this case raises [the concern of collusion between the parties to depress property value for tax purposes]; indeed, CCleveland's central objection arises because the parties to the sale-leaseback succeeded in maximizing the value of the realty: the seller received an elevated sale price and, as consideration, committed to paying the purchaser a stream of elevated lease payments, which in turn allowed the purchaser to fetch a greater sale price later on.").

{¶ 18} The BTA concluded that the Setla-Kaufmann sale and leaseback transaction was analogous to the sale-leaseback in *AEI* and that each party to the transaction acted in its own self-interest. The evidence in the record supports the BTA's conclusion. Ben C. Kaufmann, a member of Kaufmann Executive Drive, LLC, testified at the BTA hearing that, because of a prior sale of another property, he needed to engage in a "1031

exchange"[2] for tax purposes and that the purchase of the property involved in this case was part of that process. Mr. Kaufmann further testified that, in the transaction, "I was interested in the rent I was going to get, the rate of return." (BTA Tr. 37.) Similarly, in their brief, appellants assert that "Kaufmann needed to complete a 1031 like-kind exchange, while Setla needed to obtain operating capital." (Appellant's Brief, 34-35.) As in *AEI*, the record demonstrates that Setla and Kaufmann each "manifestly pursued its objective to obtain maximum value from the real property interests in the transaction." *AEI* at ¶ 21.

{¶ 19} Appellants assert that the *AEI* decision is distinguishable because, in *AEI*, the parties to the sale-leaseback transaction had no prior relationship. However, as the Supreme Court of Ohio explained in the *N. Royalton* decision, the concern with "related parties" in a property transfer is that they "may be pursuing the identical interest of common owners rather than acting as separately interested, typically motivated actors in the marketplace." *N. Royalton* at ¶ 33. In this case, evidence in the record demonstrates that each party to the Setla-Kaufmann sale and leaseback transaction was acting in its own self-interest and seeking to maximize the value it received from the transaction. Therefore, we conclude that the BTA's decision was not unreasonable and unlawful in concluding that Setla and Kaufmann were not "related parties" such that the Setla-Kaufmann sale would not constitute an arm's-length transaction.

{¶ 20} Appellants also argue that the Setla-Kaufmann sale and leaseback transaction was not an arm's-length transaction because it did not occur on the open market. Appellants assert that Setla identified Kaufmann as a potential investor based on their landlord-tenant relationship in Arkansas and that there was no evidence that anyone other than Kaufmann was notified that Setla sought to sell the property. In *N. Royalton*, the Supreme Court explained that, while an arm's-length transaction generally occurs on the open market, "[t]he case law does not condition character of a sale as an arm's-length transaction on whether the property was advertised for sale or was exposed to a broad range of potential buyers." *Id.* at ¶ 29. The Supreme Court noted that there was a long

---

[2] Mr. Kaufmann's reference to a "1031 exchange" appears to refer to Section 1031 of the Internal Revenue Code, "which provides for nonrecognition and tax deferral of gain or loss that is realized from the exchange of qualified business or investment opportunity." *Bedford Bd. of Edn. v. Cuyahoga Cty. Bd. of Revision*, 132 Ohio St.3d 371, 2012-Ohio-2844, fn.2.

line of BTA decisions applying the court's case law to "private sales" which established that the absence of open-market elements did not necessarily negate the arm's-length nature of a transaction. *Id.* at ¶ 30. As explained above, we find that there is evidence in the record to support the BTA's conclusion that the Setla-Kaufmann sale and leaseback transaction was an arm's-length transaction. Although the Setla-Kaufmann sale may have been analogous to a "private sale" because there is no evidence that the property was made available for sale to anyone other than Kaufmann, we conclude that the absence of open-market elements does not negate the other indicia that this was an arm's-length transaction.

{¶ 21} We conclude that there was reliable and probative evidence in the record to support the BTA's determination that the Setla-Kaufmann sale was an arm's-length transaction. Although the Baker-Setla sale and the Setla-Kaufmann sale were recorded only one minute apart, the Setla-Kaufmann sale was recorded later and therefore closer in time to the tax lien date for tax year 2008. The BTA's decision that the Setla-Kaufmann sale price represented the true value of the property under R.C. 5713.03 was not unreasonable and unlawful.

{¶ 22} Accordingly, we overrule appellants' first through fifth assignments of error.

{¶ 23} Next, we turn to appellants' seventh and tenth assignments of error, which assert that the BTA erred by denying Checkers' motion for substitution. In their seventh assignment of error, appellants assert that the BTA violated Checkers' due process rights by denying the motion for substitution. Similarly, in their tenth assignment of error, appellants claim that the BTA's order is unreasonable and unlawful because the BTA failed to consider the arguments that Checkers would have presented.

{¶ 24} In its order denying Checkers' motion for substitution, the BTA referred to its own earlier cases holding that a property owner has a right under R.C. 5715.19(A) to file a complaint against the valuation of a property but that a lessee does not. The BTA also cited court decisions holding that a property owner has a right to participate as an appellee in BTA proceedings whether or not the owner filed a complaint before the BOR. The BTA acknowledged the Supreme Court of Ohio's holding in *Toledo Pub. Schools Bd. of Edn. v. Lucas Cty. Bd. of Revision,* 124 Ohio St.3d 490, 2010-Ohio-253, that a property management company could file a valuation complaint as an agent of the property owner

under the terms of its management agreement. Citing a portion of a lease agreement contained in the record, however, the BTA concluded that Checkers, as the party that assumed Setla's obligations under the lease, was not an agent of the property owner and denied the motion to substitute.

{¶ 25} Checkers moved for reconsideration, arguing that the BTA cited a provision of an old lease agreement, not the Setla-Kaufmann lease agreement that it assumed under the federal bankruptcy proceedings. Checkers argued that, under the relevant provision of the Setla-Kaufmann lease agreement, the lessee was an agent of the property owner and had express authorization to pursue property valuation adjustments.

{¶ 26} The BTA denied Checkers' motion for reconsideration. The BTA acknowledged that the lessee under the Setla-Kaufmann lease agreement was expressly authorized to seek tax reductions on behalf of the property owner, thereby implicitly recognizing that it relied on the wrong lease in its initial decision. However, the BTA concluded that this provision of the lease agreement did not overcome case law holding that only owners have standing to pursue property valuation complaints. In its order denying the motion for reconsideration, the BTA failed to reconcile this conclusion with the holding in *Toledo Pub. Schools* that, under certain circumstances, an agent may pursue a valuation challenge on behalf of a property owner, which it had cited in its earlier decision. Thus, it appears that the BTA may have erred in denying the motion for reconsideration of the order denying Checkers' motion for substitution.

{¶ 27} Assuming for purposes of analysis that the BTA erred by denying Checkers' motion for substitution, we conclude that such error was harmless. As explained above, the relevant issue for determining the property valuation was whether the Setla-Kaufmann sale and leaseback transaction was an arm's-length transaction. Checkers only became involved in this transaction when it agreed to assume Setla's obligations under the Setla-Kaufmann lease as part of Setla's bankruptcy proceedings in federal court. In their brief, appellants assert that this assumption was approved by the federal bankruptcy court on August 31, 2009. This was more than two years after Setla and Kaufmann entered into the sale and leaseback transaction. Checkers has shown no evidence that it had any information regarding the events leading to the Setla-Kaufmann sale and leaseback transaction. In their brief, appellants assert that Checkers' interests were not

represented in the BTA proceedings because Kaufmann was not involved in the transaction between Setla and Checkers and had no knowledge of the negotiations leading to Checkers' assumption of Setla's obligations under the lease agreement. However, Checkers' understanding of its obligations under the lease agreement is not relevant to whether the Setla-Kaufmann sale and leaseback transaction was an arm's-length transaction. Further, both Checkers and Kaufmann had an opportunity to assert any arguments regarding the nature of the Setla-Kaufmann sale and leaseback transaction as part of this appeal. After reviewing those arguments, we concluded that it was an arm's-length transaction.

{¶ 28} Accordingly, we overrule appellants' seventh and tenth assignments of error.

{¶ 29} Finally, we conclude that appellant's sixth, eighth, and ninth assignments of error fail to meet the requirements of the Ohio Rules of Appellate Procedure. "An appellant must demonstrate each assigned error through an argument supported by citations to legal authority and facts in the record." *Ford Motor Credit Co. v. Ryan*, 189 Ohio App.3d 560, 2010-Ohio-4601, ¶ 23 (10th Dist.). If an appellant fails to separately argue an assignment of error in its brief, the appellate court may disregard that assignment of error. App.R. 12(A)(2). *See also Ryan* at ¶ 23 ("If an appellant neglects to advance [an argument supported by citations to legal authority and facts in the record], a court of appeals may disregard the assignment of error.").

{¶ 30} Appellants' sixth assignment of error asserts that the BTA lacked jurisdiction to render its decision. In their eighth assignment of error, appellants assert that the BTA's decision is unreasonable and unlawful because it constitutes a collateral attack on an order issued by a federal bankruptcy court. Similarly, in their ninth assignment of error, appellants assert that the decision is unreasonable and unlawful because it violates an order issued by that same federal bankruptcy court. However, appellants brief contains no argument related to any of these assignments of error. Moreover, with respect to the sixth assignment of error, appellants' counsel conceded at oral argument that the BTA possessed jurisdiction over the case. Due to the lack of authority and argument in support of appellants' sixth, eighth, and ninth assignments of error, we will consider them to be waived. *See Hamad v. Hamad*, 10th Dist. No. 12AP-

617, 2013-Ohio-2212, ¶ 25; *Ryan* at ¶ 23. Accordingly, we overrule the sixth, eighth, and ninth assignments of error.

{¶ 31} For the foregoing reasons, we overrule appellants' ten assignments of error and affirm the decision of the Board of Tax Appeals.

*Decision affirmed.*

KLATT, P.J., and SADLER, J., concur.

_____