[Cite as *Inn at the Wickliffe, L.L.C. v. Wickliffe City Bd. of Edn.*, 2015-Ohio-138.]

# IN THE COURT OF APPEALS

## ELEVENTH APPELLATE DISTRICT

## LAKE COUNTY, OHIO

| | | |
|---|---|---|
| INN AT THE WICKLIFFE, LLC, | : | **O P I N I O N** |
| Appellant, | : | |
| - vs - | : | **CASE NO. 2014-L-045** |
| WICKLIFFE CITY BOARD OF EDUCATION, et al., | : | |
| | : | |
| Appellees. | | |

Administrative Appeal from the Ohio Board of Tax Appeals, Case No. 2011-2366.

Judgment:  Reversed and vacated.


*Jodi Littman Tomaszewski* and *Joshua J. Strickland,* Dworken & Bernstein Co. L.P.A., 60 South Park Place, Painesville, OH  44077 (For Appellant).

*Wayne E. Petkovic,* 840 Brittany Drive, Delaware, OH  43015 (For Appellee Wickliffe City Board of Education).

*Charles E. Coulson*, Lake County Prosecutor, and *Gianine A. Lucci*, Assistant Prosecutor, 105 Main Street, P.O. Box 490, Painesville, OH  44077  (For Appellees Lake County Auditor and Lake County Board of Revision).


COLLEEN MARY O'TOOLE, J.

{¶1}  Inn at the Wickliffe, LLC ("Wickliffe Inn") appeals from the decision and order of the Board of Tax Appeals ("BTA"), reversing the decision of the Lake County Board of Revision ("BOR") regarding the tax value of a hotel owned by Wickliffe Inn., located at 28600 Ridgehills Drive, Wickliffe, Ohio.  The Lake County Auditor had

assessed the hotel's value as $4,800,000, the amount of its most recent sale. On Wickliffe Inn's complaint, the BOR reduced the valuation to $2,500,000. On appeal by the Wickliffe City Board of Education ("Board of Education"), the BTA reinstated the value assessed by the auditor. Wickliffe Inn contends the BTA ignored changes in the market and property rendering the most recent sales price improper for establishing the hotel's tax value. We agree, and reverse and vacate the decision and order of the BTA.

{¶2} Ghanshyam Patel testified before both the BOR and BTA. Mr. Patel is the owner of Wickliffe Inn. He is from Buffalo, New York, and has owned and operated hotels and motels for many years. In May 2008, he and his then partner in Wickliffe Inn purchased the subject hotel for $4,800,000. Evidently, Mr. Patel was the principal financier of the deal; his partner, based in Cleveland, ran the business day to day. At the time of its purchase, the hotel operated as a Holiday Inn, and had revenues of $4,000,000 per year. The property is older: Wickliffe Inn promised to make certain improvements to retain the Holiday Inn franchise. Mr. Patel testified before the BTA that the Holiday Inn name is extremely valuable, as it attracts business clientele.

{¶3} In autumn 2008, the Great Recession commenced. Wickliffe Inn could not obtain loans to finance the refurbishing required by Holiday Inn. Mr. Patel testified his partner mismanaged operations at the hotel. Wickliffe Inn lost its Holiday Inn franchise in 2009. Since then, it has operated under the Ramada name. Mr. Patel testified that Ramada does not attract any significant business clientele, and that while one can let Holiday Inn rooms for $100 to $150 per night, the Ramada name limits one to $40 to $60 per night. Mr. Patel testified that revenues dropped from $4,000,000 in 2007, to just over $1,000,000 in 2010. Mr. Patel testified that due to the loss in revenues and

2

Wickliffe Inn's inability to obtain loans, the hotel fell into further disrepair, with a leaking roof, sprinkler system problems, and large numbers of rooms uninhabitable.

{¶4} Wickliffe Inn's appraiser, Dwight A. Kumler, also testified before both the BOR and BTA. He performed an appraisal of the hotel, and determined that as of the tax lien date of January 1, 2010, its value was $2,300,000.

{¶5} Wickliffe Inn filed its complaint with the BOR March 3, 2011, requesting the valuation of the hotel be set at $2,100,000. Hearing was held July 26, 2011. August 11, 2011, the BOR mailed its decision that the value of the property for the tax year 2010 was $2,500,000. The Board of Education appealed to the BTA, which held hearing April 8, 2013. The BTA filed its decision and order determining the value of the hotel to be $4,800,000, as determined by the Lake County Auditor, April 9, 2014. This appeal timely ensued, Wickliffe Inn assigning a single error: "The Ohio Board of Tax Appeals erred by reversing the findings of the Lake County Board of Revision via finding that a recent sale existed and imposing the sale price as the value of the real property despite the existence of facts that removed the recency of the sale."

{¶6} Appeals from decisions of the BTA are controlled by R.C. 5717.04. In *Kister v. Ashtabula Cty. Bd. of Revision*, 11th Dist. Ashtabula No. 2007-A-0050, 2007-Ohio-6943, ¶10-12, we held:

{¶7} "'The applicable standard of review under (R.C. 5717.04) is whether the Board's decision is "reasonable and lawful" for affirmance, and "unreasonable and unlawful" for reversal.' *Gen. Am. Transp. Corp. v. Limbach* (Dec. 30, 1983), 11th Dist. No. 3268, 1983 Ohio App. LEXIS 12463, at *2. These statutory guidelines are reinforced by case law.

3

{¶8} "'The Ohio Supreme Court has decided that in an appeal from a decision of the Board of Tax Appeals, the Courts function "is to review the board's decision to determine if it is reasonable and lawful. (* * *) As long as there is evidence which reasonably supports the conclusion reached by the board, the decision must stand." *Mobile Instrument Serv. and Repair, Inc. v. Tax Commr. of Ohio* (Dec. 6, 2000), 3d Dist. No. 8-2000-20, 2000 Ohio 1757, 2000 Ohio App. LEXIS 5670, at *5, quoting *Highlights for Children, Inc. v. Collins* (1977), 50 Ohio St.2d 186, 187-188, * * * (* * *). See also, *PPG Industries, Inc. v. Kosydar* (1981), 65 Ohio St. 2d 80, * * * (* * *); *American Steamship Co. v. Limbach* (1991), 61 Ohio St. 3d 22, * * * (* * *)[.]' (Parallel citations omitted.)

{¶9} "'The Court of Appeals is bound by the record that was before the Board of Tax Appeals and may not substitute its judgment for that of the board. *Denis Copy Co. v. Limbach* (1992), 76 Ohio App.3d 768, * * * (* * *). Additionally, the Board of Tax Appeals has wide discretion in determining the weight to be given the evidence and the credibility of witnesses that come before it. *Cardinal Fed. S. & L. Assn. v. Cuyahoga Cty. Bd. of Revision* (1975), 44 Ohio St.2d 13, * * * (* * *). Finally, we note that the burden of demonstrating that the determination is unlawful and unreasonable falls upon the appellant (* * *). R.C. 5717.04; *Hatchadorian v. Lindley* (1986), 21 Ohio St.3d 66, * * * (* * *).' *Mobile Instrument*, *supra*, at 5-6. (Parallel citations omitted.)"

{¶10} As the Tenth District recently noted, "'In an appeal to the BTA, the party challenging the BOR's decision has the burden of proof to establish the party's proposed value as the value of the property.'" *Bd. of Edn. of the Columbus City Schools v. Franklin Cty. Bd. of Revision*, 10th Dist. Franklin No. 14AP-167, 2014-Ohio-4360,

4

¶19, quoting *Piepho v. Franklin Cty. Bd. of Revision*, 10th Dist. Franklin No. 13AP-818, 2014-Ohio-2908, ¶6, citing *Sapina v. Cuyahoga Cty. Bd. of Revision*, 136 Ohio St.3d 188, 2013-Ohio-3028, ¶26; *Colonial Village Ltd. v. Washington Cty. Bd. of Revision*, 123 Ohio St.3d 268, 2009-Ohio-4975, ¶23. Further, "'when a taxpayer presents evidence contrary to the auditor's valuation and no evidence is offered to support the auditor's valuation, the BTA may not simply reinstate the auditor's determination.' [*Dublin City Schools Bd. of Edn v. Franklin Cty. Bd. of Revision*, 139 Ohio St.3d 193, 2013-Ohio-4543, ¶17], citing *Dayton-Montgomery* [*Cty. Port Auth.v. Montgomery Cty. Bd. of Revision*, 113 Ohio St.3d 281, 2007-Ohio-1948] at ¶27; *Bedford Bd. of Edn. v. Cuyahoga Cty. Bd. of Revision*, 115 Ohio St.3d 449, 2007-Ohio-5237, ¶11-12*, * * *.*" (Parallel citation omitted.) *Columbus City Schools* at ¶28.

{¶11} R.C. 5713.03 controls the taxable valuation of real property. Regarding the version of that statute current when the Lake County Auditor valued the hotel in this case, the Supreme Court of Ohio has stated:

{¶12} "Former R.C. 5713.03 stated that a county auditor (or in this case fiscal officer) '*shall* consider the sale price (* * *) to be the true value for taxation purposes' when the property 'has been the subject of an arm's length sale between a willing seller and a willing buyer within a reasonable length of time, either before or after the tax lien date.' (Emphasis added.) * * * 'The best evidence of the "true value in money" of real property is an actual, recent sale of the property in an arm's-length transaction.' *Conalco v. Monroe Cty. Bd. of Revision*, 50 Ohio St.2d 129, * * * (1977), paragraph one of the syllabus, citing *State ex rel. Park Invest. Co. v. Bd. of Tax Appeals*, 175 Ohio St. 410, * * * (1964)." (Emphasis sic.) (Footnote omitted.) (Parallel citations omitted.)

5

*Akron City School Dist. Bd. of Edn. v. Summit Cty. Bd. of Revision*, 139 Ohio St.3d 92, 2014-Ohio-1588, ¶12.

{¶13} In this case, there is no dispute that Wickliffe Inn acquired the subject hotel in an arm's length transaction as a willing buyer from a willing seller in May 2008, less than two years prior to the tax lien date of January 1, 2010. Thus, the sale was within 24 months of the lien date, and is presumptively a "recent" sale, evidencing the true tax value of the hotel. *Akron City School Dist. Bd. of Edn.*, *supra*, at ¶26. Thus, to show that the sale for $4,800,000 did not establish the tax value of the hotel, Wickliffe Inn was required to introduce evidence of market changes or changes in the property between the time of the sale, and the lien date. *See, e.g.*, *Worthington City Schools Bd. of Edn. v. Franklin Cty. Bd. of Revision*, 129 Ohio St.3d 3, 2011-Ohio-2316, ¶21 and fn. 1.

{¶14} Before both the BOR and the BTA, Mr. Patel testified that the Great Recession made it impossible to obtain loans to refurbish the hotel; that loss of the Holiday Inn franchise destroyed the hotel's business clientele; and that the hotel had seriously declined in condition. The changes in lending opportunities available to businesses and individuals caused by the Great Recession is obviously a market change, and the deterioration of the hotel's physical condition is obviously a change in the property. Further, the loss of the Holiday Inn franchise appears to us a market change. The dictionary definition of "market" includes: "A subdivision of a population considered as buyers < the college *market* >." (Emphasis sic.) *Webster's II New College Dictionary* 670 (1999). Mr. Patel's testimony established that the balance of the

6

hotel's revenue had come from business travelers when it was a Holiday Inn, and that Wickliffe Inn could not get any business travelers as a Ramada.

{¶15} Consequently, Wickliffe Inn carried its burden before the BOR of showing the hotel's value was below that determined by the auditor. The decision of the BOR reflects this. *Kister, supra*, at ¶15. The Board of Education did not respond with any evidence to rebut this showing on appeal to the BTA. A reading of the BTA's decision and order indicates it relied on the decision in *Worthington City Schools Bd. of Edn., supra*, and that in *Bedford Bd. of Edn. v. Cuyahoga Cty. Bd. of Revision*, 132 Ohio St.3d 371, 2012-Ohio-2844, for the proposition that the loss of tenants to a commercial property does not necessarily impugn a recent sales price as the proper standard for setting the tax value of the property. We respectfully agree with Wickliffe Inn that both cases are distinguishable. They involved properties renting space to commercial tenants, not a hotel seeking guests. Most significantly, neither involved a change in *market* conditions: the properties involved remained in the business of letting space to small businesses. In this case, the evidence establishes that Wickliffe Inn's loss of the Holiday Inn franchise changed its market, from letting rooms principally to business travelers, to letting rooms to travelers in general. Mr. Patel's testimony established that the business travelers market is significantly different, and more profitable, than the latter.

{¶16} The BTA simply reinstated the auditor's valuation, without the Board of Education presenting evidence the BOR's valuation of the property was wrong. This has been forbidden by the Supreme Court of Ohio. *Dublin City Schools*, *supra*, at ¶17. Consequently, the decision and order of the BTA was unlawful and unreasonable.

7

{¶17} The assignment of error has merit. The decision and order of the Board of Tax Appeals is reversed and vacated.

DIANE V. GRENDELL, J., concurs with a Concurring Opinion,

CYNTHIA WESTCOTT RICE, J., dissents with a Dissenting Opinion.

_____

DIANE V. GRENDELL, J., concurs, with a Concurring Opinion.

{¶18} I concur in the majority's judgment and analysis in this case. I write separately solely to address the dissenting opinion.

{¶19} The dissent concludes that the value of the property at the time it was sold to appellant should be applied for tax purposes. The logic of such an argument must be questioned, given that the dissent essentially concedes that the value of the property has decreased since the time of purchase, yet still advocates that a higher value should be used. It would be unjust and improper to order appellant to pay greater taxes on the property than are supported by the evidence of the property's present value, which is clearly less than it was at the time of its purchase.

{¶20} While the dissent asserts that the appellant had the burden to prove that the character of the property or the market changed, this burden was met. The change of the property from a Holiday Inn to a Ramada Inn franchise drastically altered the property's operations and its character as a whole. Further, the evidence of the appellant's inability to obtain a loan, consistent with the rapidly shifting economy during

8

the recession at that time, also met the burden as to the change in market. As explained in the opinion, the appellees' failure to rebut the valuation evidence provided by appellant warrants reversal. *Supra* at ¶15.

{¶21} Given the foregoing, and for the reasons outlined in the opinion, I concur in the majority's judgment.

————————————

CYNTHIA WESTCOTT RICE, J., dissents with a Dissenting Opinion.

{¶22} Because I disagree with the majority's statement of the facts, analysis, and disposition, I respectfully dissent.

{¶23} Appellant purchased the subject hotel, which was then operated as a Holiday Inn, in May 2008 for $4,800,000. The first tax-lien date after the sale occurred 18 months later on January 1, 2010, at which time the Lake County Auditor assessed the value of the property at $4,800,000, based on the 2008 sale price.

{¶24} Thereafter, appellant filed a complaint with the Lake County Board of Revision, seeking a reduction of the auditor's valuation of more than 50% to $2,100,000. Appellee filed a countercomplaint, seeking to maintain the auditor's valuation. The Board of Revision reduced the value of the hotel to $2,500,000. Appellee subsequently appealed the Board of Revision's valuation to the Ohio Board of Tax Appeals, seeking reinstatement of the auditor's valuation of $4,800,000.

{¶25} At the hearing held by the Board of Tax Appeals in 2013, appellant's owner, Ghanshyam K. Patel, testified that he and his business partner purchased the hotel in May 2008. Mr. Patel lived in New York at the time and provided the capital for

9

the purchase, while his partner operated the hotel. Mr. Patel said that when they bought the hotel, the seller disclosed the property was in need of extensive repairs. He said the purchase agreement recites that 30 of the hotel's 213 suites were uninhabitable because they were water-damaged. Mr. Patel said this was due to the deteriorated roof which had many leaks. The contract provided that appellant was purchasing the property "as-is," and gave appellant 60 days from execution of the agreement to inspect the hotel and to cancel the contract, if it chose to do so. The purchase agreement also indicates that the seller gave appellant an inspection report, dated October 1, 2007, showing the hotel was in violation of multiple building code requirements. Mr. Patel inspected the hotel and found that 70 suites were uninhabitable due to water damage. Mr. Patel said he bought the property knowing that "everything was deteriorated."

{¶26} Mr. Patel said the hotel had been operating under a Holiday Inn franchise for some time. He notified Holiday Inn of the pending sale and asked that the franchise be transferred to appellant. Holiday Inn officials conducted an inspection and identified all areas requiring renovation. In order to retain the Holiday Inn franchise, Mr. Patel agreed to make the listed renovations, which he understood would cost $2 million.

{¶27} During the summer of 2009, Mr. Patel learned that his partner had not paid numerous vendors, employee wages, real estate taxes, the hotel's utilities, the mortgage, or Holiday Inn's franchise fees, in the combined amount of $1.5 million. Mr. Patel said that *as a result of his partner's "mismanagement" of the hotel*, appellant lost its Holiday Inn franchise in early 2009. He said that, due to the loss of the franchise, appellant lost its corporate customers and its business declined. Mr. Patel's partner then purchased a Ramada Inn franchise for the hotel, but, according to Mr. Patel, this

10

franchise was not as valuable as the Holiday Inn franchise because Ramada Inn caters to all types of guests, while Holiday Inn focuses on corporate customers.

**{¶28}** Mr. Patel said that sometime after his partner lost the Holiday Inn franchise, he, Mr. Patel, moved to Cleveland to operate the hotel in September 2009. He admitted that as of the date of the hearing in 2013, he still had not replaced the roof. He said he owes Lake County more than $500,000 in delinquent real estate taxes. He also stopped paying the mortgage. Mr. Patel is also delinquent on his franchise fees owed to Ramada Inn, and that company has threatened to cancel appellant's franchise.

**{¶29}** Mr. Patel said he bought the property planning to renovate the entire hotel if they were able to obtain a loan. However, he did not undertake any renovations. He said that in 2008, the year he bought the hotel, "there was a crunch in the economy," and he was unable to obtain a loan to make the necessary repairs. However, he said that as of the date of the Board of Tax Appeals hearing in 2013, long after the recovery of the economy, he still could not get a loan to make the repairs.

**{¶30}** Appellant presented an appraisal of the property to the Board in the amount of $2,300,000. However, his appraiser testified this appraisal was based in part on his inspection of the property in 2011 that revealed about 60 suites remained uninhabitable.

**{¶31}** Appellant argued that, due to the foregoing circumstances, the sale in 2008 was too remote to be considered the best evidence of the property's true value. The Board of Tax Appeals disagreed, holding that the foregoing evidence was insufficient to show that the 2008 sale of the hotel was not the best evidence of the

11

property's value as of the tax-lien date. The Board held the true value of the hotel was $4,800,000.

{¶32} The determination of the value of real property is within the province of Board of Tax Appeals, and an appellate court cannot disturb the Board's decision unless it is unlawful and unreasonable. *Cuyahoga Cty. Bd. of Revision v. Fodor*, 15 Ohio St.2d 52 (1968), syllabus. Further, as long as there is evidence that supports the Board's conclusion, its decision must stand. *Mobile Instrument, supra*. The Board of Tax Appeals has wide discretion in determining the weight to be given to the evidence and the credibility of the witnesses who testify before it. *Cardinal Fed., supra*. Finally, the appellant has the burden of demonstrating that the decision of the Board of Tax Appeals is unlawful and unreasonable. *Mobile Instrument, supra*.

{¶33} Former R.C. 5713.03 (which applies to this case) provided that a county auditor "shall consider the sale price * * * to be the true value for taxation purposes" when the property "has been the subject of an arm's length sale between a willing seller and a willing buyer within a reasonable length of time, either before or after the tax lien date." The Supreme Court of Ohio has stated that the best evidence of the value of real property is an actual, recent sale of the property in an arm's-length transaction. *Conalco, supra.* Further, the Supreme Court has said that "the only rebuttal lies in challenging whether the elements of recency and arm's-length character between a willing seller and a willing buyer are genuinely present for that particular sale." *Cummins Property Servs., L.L.C. v. Franklin Cty. Bd. of Revision*, 117 Ohio St.3d 516, 2008-Ohio-1473, ¶13. Appellant admits it was a willing buyer, and does not challenge the arm's-length nature of the sale, but only disputes its recency.

**{¶34}** Former R.C. 5713.03 conditioned the use of the sale price to determine value on the sale having occurred "within a reasonable length of time, either before or after the tax lien date. The Supreme Court has held that such sale is presumed to be recent and the price is presumed to be the property's true value. *Cummins, supra*, at ¶41. The Supreme Court recently adopted a bright-line test for determining when this presumption should apply. The Court in *Akron City Sch. Dist. Bd. of Educ. v. Summit County Bd. of Revision*, 139 Ohio St.3d 92, 2014-Ohio-1588, held that a sale which occurred within 24 months before the tax-lien date is presumed to be recent, and the proponent of the sale price is not required to come forward with evidence showing that market conditions or the character of the property has not changed between the sale date and the tax-lien date. *Id.* at ¶26. Rather, the appellant has the burden to demonstrate a change in the market or the character of the property. *Id.*

**{¶35}** Here, appellant bought the hotel in an arm's-length transaction less than 24 months before the January 1, 2010 tax-lien date, and, as the majority correctly notes, the sale is thus presumed to be recent and to evidence the true value of the hotel. As a result, appellant had the burden to prove that market conditions or the character of the property changed between the sale date and the tax-lien date so that $4,800,000 is no longer the true value of the hotel.

**{¶36}** The majority holds that appellant's reduced lending opportunities caused by the general economic downturn and appellant's loss of the Holiday Inn franchise "appear to be" market changes. However, the majority does not cite any case law supporting this conclusion. Moreover, appellant bought the hotel in May 2008 *in the midst of the economic downturn.* Thus, any reduction in appellant's lending

13

opportunities did not begin after the sale and thus did not constitute a market change. Significantly, Mr. Patel said that even after the economic downturn, he still cannot get a loan to renovate the hotel. Thus, it was not any market change that prevented appellant from getting a loan, but, rather, other factors, such as the poor condition of the property and/or appellant's lack of creditworthiness,.

**{¶37}** Next, the majority virtually ignores the undisputed evidence that the mismanagement of the hotel by its current owners caused the loss of the hotel's Holiday Inn franchise, resulting in the erosion of the hotel's customer base. Mr. Patel said that appellant lost its Holiday Inn franchise *due to his partner's mismanagement*. However, appellant chose his partner and left him in charge. For months, Mr. Patel and/or his partner ran the business into the ground, failing to pay the hotel's bills or employees, its utilities, real estate taxes, and mortgage, which led to the loss of the hotel's Holiday Inn franchise. As the Board of Tax Appeals astutely noted, reduced occupancy does not establish a change in market conditions where it may have resulted "from a number of factors, including the current owner's management practices." *See Worthington, supra*. Here, appellant's loss of the Holiday Inn franchise (and the resulting decline of its business) was caused by appellant's management practices, *not* any downturn in the economy.

**{¶38}** Further, the majority states the character of the property changed between the sale date and the tax-lien date. However, the property was in deplorable condition before the sale, and Mr. Patel was aware of its condition before he bought it. Thus, there was no change to the character of the hotel between the sale and tax-lien dates.

14

**{¶39}** As a result, the decision of the Board of Tax Appeals upholding the Lake County Auditor's valuation was reasonable and lawful and I would affirm.

**{¶40}** I therefore respectfully dissent.